IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:12-cv-00198-RLV-DSC

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | DEFAULT JUDGMENT |
| ) | |
| REBECCA PENLEY CANIPE, ) | |
| individually and d/b/a Randolphs ) | |
| Billiards a/k/a 5 O'Clock ) | |
| Somewhere, and STARTOWN ) | |
| LOUNGE, INC., f/d/b/a Randolphs ) | |
| Billiards a/k/a 5 O'Clock ) | |
| Somewhere, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff Joe Hand Promotion Inc.'s ("Joe Hand's") unopposed Motion for Default Judgment, filed March 29, 2013. (Doc. 11.)

### I. PROCEDURAL AND FACTUAL HISTORY

On January 19, 2013, Defendants Canipe and Startown Lounge, Inc., were served with summonses and Plaintiff's Complaint. (Docs. 5, 6.) Defendants' responsive pleadings were due twenty-one days later on February 11, 2013. Fed. R. Civ. P. 12(a)(1). To date, Defendants have neither filed a responsive pleading nor requested an extension of time to do so. Accordingly, upon Plaintiff's prior motion (Doc. 8), the Clerk of Court entered default against Defendants (Doc. 10). Plaintiff here seeks entry of default judgment against Defendants for the unlawful interception and use of a telecast to which Plaintiff owned exclusive distribution rights; an award of $110,000 in statutory damages, including enhanced damages; additional compensatory damages in the amount of $1,100; and reasonable costs and attorney's fees in the amount of

1

$1,012.50. (*See* Doc. 11-1 at 2; Doc. 11-4 at 2.) For the reasons stated below, Plaintiff's Motion is granted in part.

Plaintiff Joe Hand, a closed-circuit distributor of sports and entertainment programming, alleges that it was contractually granted the exclusive right to distribute commercially "Ultimate Fighting Championship 123: Rampage Jackson vs. Lyoto Machida" ("the Program"), including the "main event" fight itself, all undercard bouts, and commentary, scheduled for November 20, 2010, via closed-circuit television and encrypted satellite signal. Pursuant to this purchase contract, Plaintiff entered into sublicensing agreements with a number of commercial entities throughout North America, thereby granting such entities, in exchange for a fee, the right to exhibit the Program to their patrons. (Doc. 1 at 3–4.)

Plaintiff further alleges that on November 20, 2010, Defendant Canipe exhibited the Program at Randolphs Billiards, now doing business as Startown Lounge, without first obtaining a sublicense for the Program, which would have cost $1,100 given that Randolphs had a capacity of fifty to seventy-five occupants. (Doc. 11-3 at 3, 8) (explaining that a given rate is determined by the establishment's capacity). Instead, Defendant Canipe knowingly and unlawfully intercepted, received, or descrambled the satellite or cable signal for the Program.

In support of these allegations, Plaintiff has submitted an affidavit from a private investigator, Michael Sanders, who observed the Program at Randolphs on November 20, 2010. (Doc. 11-2.) There were four televisions within Randolphs exhibiting the Program. At the time he entered the establishment, Mr. Sanders observed some Program commentary and the first round of the main-event fight. He further counted twenty patrons present at one point during his visit and estimated the establishment's capacity to be between fifty and seventy-five occupants.

Plaintiff subsequently filed its Complaint in this Court, alleging violations of the

2

Communications Act of 1934, 47 U.S.C. § 605 (Count I), the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 (Count II), and state-law conversion (Count III). (Doc. 1.)

## II. DISCUSSION

After entry of default, a court may grant default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. Upon default, the well-pleaded allegations of the Complaint relating to liability are taken as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). However, Defendant, by his default, does not admit conclusions of law or that the movants are entitled to the relief they seek. *See Thomson v. Wooster*, 114 U.S. 104, 113 (1885) (stating that a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill"). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought . . . ." *Ryan*, 253 F.3d at 780. While the Court "may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum." *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 706 (W.D.N.C. 2012) (Conrad, C.J.).

Plaintiff having brought claims under 47 U.S.C. §§ 553 and 605, and state law, the essence of Plaintiff's cause of action is that Defendant Canipe unlawfully intercepted and intentionally broadcast the Program at Randolphs for the purpose of direct or indirect commercial advantage.

There is a split in authority as to the applicability of sections 553 and 605 to pirated programming involving cable versus satellite services at delivery point, and the Fourth Circuit has not addressed this specific issue. However, a number of courts within the Fourth Circuit have adopted the Seventh Circuit's position in *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996), deeming 47 U.S.C. § 553 not to overlap with 47 U.S.C. § 605. *See, e.g.*, *Columbia Cable TV Co. v. McCary*, 954 F. Supp. 124, 128 (D.S.C. 1996) (deeming section 605 inapplicable per the reasoning in *Norris*); *Joe Hand Promotions, Inc. v. Dock Street Enters.*, No. 11-1973, 2011 WL 6141058, at *3–4 (D. Md. Dec. 8, 2011) (adopting the *Norris* view that section 605 applies to the interception of cable signals "before they begin to travel through the cable," while section 553 applies to transmissions "at the point in the system that the transmission is carried by coaxial cable or wires" (citation omitted)); *see also TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 204-07 (3d Cir. 2001) (recognizing the disagreement between the holdings in *Norris* and *International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996), and holding "that § 605 encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system, and no more" (internal quotation marks omitted)); *contra Sykes*, 75 F.3d at 131–33 (holding that claims of unauthorized broadcasts of cable television transmissions may be brought under both 47 U.S.C. §§ 553 and 605, *but applying only section 605's heavier penalties*). It thus appears that sections 553 and 605 provide mutually exclusive relief for the alternate means of reception—cable and satellite, respectively—of the encrypted signal, and the Court recognizes that one of these sections should not apply in the instant case. While the record does not reveal which means of reception was utilized by Defendants, in light of the Court's award of damages, the distinction is without a difference in this case. *Cf. Columbia Cable*, 954 F. Supp. at 128 (noting that even if

4

47 U.S.C. § 605 were applicable to cable theft, under the facts of the case, the court would award damages "as close as permissible to the amount awarded under § 553").

As a preliminary matter, then, an award for damages under both sections is inappropriate. *Romenski*, 845 F. Supp. 2d at 706–07; *Joe Hand Promotions, Inc. v. The Precint Bar–Daxlam, Ltd.*, 3:10-199, 2010 WL 3420189, *2 & n.2 (D.S.C. Aug. 23, 2010); *J & J Sports Prods., Inc. v. Olmos*, 5:08-33, 2010 WL 625283, at *4 (W.D.N.C. Feb. 9, 2010) (citing *Kingvision Pay-Per-View, Ltd. v. Ortega*, 2002 WL 31855367, at *2 (N.D. Cal. Dec. 16, 2002)); *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 472 (E.D.N.Y. 2009); *Kingvision Pay-Per-View, Ltd. v. Las Reynas Rest., Inc.*, No. 4:07-67, 2007 WL 2700008, at *1 (E.D.N.C. Sept. 11, 2007); *contra Spencer Promotions, Inc. v. 5th Quarter Enters.*, No. 94-0988, 1996 WL 438789, at *7–8 (N.D. Cal. Feb. 21, 1996) (awarding damages under both statutes). Additionally, although section 605 provides a higher maximum enhancement for willful violations ($100,000) than does section 553 ($50,000), this distinction is of no moment here.

As to Count I, 47 U.S.C. § 605(a) provides, in pertinent part,

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Any person aggrieved by a violation of subsection 605(a) may bring a private civil action against the violator and seek damages under subsection 605(e)(3)(C).

Subsection 605(e)(3)(C) allows for an aggrieved party to recover either actual damages or an award of statutory damages for each violation, and in the event the violation at issue "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," such damages may be increased "by an amount of not more than $100,000." The award of statutory damages under subsection 605(e)(3) is committed to the Court's discretion. 47 U.S.C. § 605(e)(3)(C)(ii); *see also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 330 n.8 (4th Cir. 2008) (adopting the factors invoked in *Nalley v. Nalley*, 53 F.3d 649 (4th Cir. 1995), for purposes of discretionary decisions regarding the imposition of statutory damages). Directing the use of such discretion, the Fourth Circuit has deemed the following factors relevant: the severity of the violation; the degree of harm to the plaintiff; the relative financial burdens of the parties; and the purpose to be served by imposing statutory damages. *Rawlins*, 523 F.3d at 330. In addition, these *Nalley* factors "should be considered against the backdrop of the seriousness with which Congress has treated the underlying conduct at issue." *Id.* at 328 (noting that Congress intended "that violators who intercept encrypted transmissions, requiring greater technical savvy and efforts, are to face greater punishments than those who take fewer measures in order to intercept nonencrypted transmissions") (internal citations omitted).

As to Count II, 47 U.S.C. § 553(a)(1) reads,

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

Like section 605, section 553 provides for a private right of action for any person aggrieved by a violation of subsection (a)(1), 47 U.S.C. § 553(c)(1), allows an aggrieved party to recover either actual or statutory damages, § 553(c)(3)(A), and permits the trial court in its discretion to award enhanced damages, § 553(c)(3)(B) (permitting damages to be increased by no more than $50,000

6

per violation).

As to Count III, "[t]he tort of conversion is well defined as 'an authorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012) (quoting *Peed v. Burleson's, Inc.*, 94 S.E.2d 351, 353 (N.C. 1956)).

Based on the foregoing facts and in light of relevant law, the Court finds Plaintiff has sufficiently alleged that Defendants engaged in the unauthorized and knowing interception of Plaintiff's broadcast, which Defendant Canipe published in Randolphs in order to benefit herself, her business, and her patrons. Accordingly, Plaintiff is entitled to statutory damages up to $10,000. 47 U.S.C. §§ 553(c)(3)(A)(ii) (requiring that such damages be no less than $250), 605(e)(3)(C)(i)(II) (requiring that such damages be no less than $1,000). Additionally, the Court finds it appropriate to award additional damages because Defendants' violation, having taken place in a commercial establishment rather than a residence, "was committed willfully" and for purposes of "commercial advantage or private financial gain," and the pleadings make clear that such interception was not done accidentally or innocently. 47 U.S.C. §§ 553(c)(3)(B) (permitting an increase of up to $50,000), 605(e)(3)(C)(ii) (permitting an increase of up to $100,000).

As regards enhanced damages, the violation, while willful, was not particularly severe or harmful as only about twenty patrons who otherwise should not have been able to access the Program were in attendance, and there was no cover charge or evidence of a premium charged for food or drinks; the "commercial advantage or private financial gain" was thus minimal. (*See* Doc. 11-2 at 1.) Additionally, there is no history of similar violations on the part of Defendants, and the number in attendance indicates that Randolphs was a modest venue and so a smaller

award would achieve an adequate deterrent effect. However, in order to curtail the unlawful interception of communications services, Plaintiff has incurred substantial expense in monitoring venues like Randolphs, and a proportionate reimbursement is merited.

The Court first awards actual damages under the statutory scheme, that is, the $1,100 Program fee. 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i). The Court declines to award cumulative damages for the separate, state-law claim of conversion, which stems from the same conduct. *Romenski*, 845 F. Supp. 2d at 707 (holding that a plaintiff "may not recover conversion damages in addition to actual or statutory damages"). However, the Court shall further award $2,200 in enhanced damages pursuant to 47 U.S.C. §§ 553(c)(3)(B) and 605(e)(3)(C)(ii). Trebling the amount of the program fee serves as a sufficient deterrent in this case. *Cf. Romenski*, 845 F. Supp. 2d at 708 (doing likewise). Finally, Plaintiff requests $1,012.50 in attorney's fees, which represents 4.5 hours of work at $225 per hour. This sum is reasonable. Plaintiff is also entitled to the costs of this action but has yet to submit such costs to the Court. 47 U.S.C. §§ 553(c)(2), 605(e)(3)(B)(iii); Fed. R. Civ. P. 54(d)(1).

Therefore, the Court directs the Clerk to enter judgment for Plaintiff against Defendant Canipe, individually and as the alter ego of the business Randolphs Billiards, and Defendant Startown Lounge, formally having done business as Randolphs Billiards, for $3,300 in statutory damages, $1,012.50 in attorney's fees, and the full costs of this action.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 11) be **GRANTED** in part and **DENIED** in part. The Clerk shall enter default judgment in Plaintiff's favor in the amount of $4,312.50 plus the full costs of this action.

Signed: April 24, 2013

Richard L. Voorhees
United States District Judge